# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | | |
|---|---|---|
| RICO STERLING, | : | |
| | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | NO. 5:16-CV-00013-MTT-MSH |
| WARDEN ERIC SELLERS, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

Presently pending before the Court are Plaintiff's motion for the appointment of counsel (ECF No. 14) and Defendants' motion to dismiss (ECF No. 22).   Plaintiff's motion to appoint counsel is denied.   For the reasons explained below, it is recommended that Defendant's motion to dismiss be granted in part and denied in part.

## BACKGROUND

Plaintiff, an inmate at Hancock State Prison in Sparta, Georgia, states that he is a practicing Muslim and brings suit pursuant to 42 U.S.C. § 1983 for alleged violations of his rights under the First, Eight, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").   Compl. 1, 5, 10, ECF No. 1.   Plaintiff contends that prison officials have a policy prohibiting religious services—including congregational prayer—in the prison's dayroom and that he has repeatedly received disciplinary reports for violating that policy.   *Id.*   Plaintiff further contends that Defendant Ivey has been retaliating against him because Plaintiff is a practicing Muslim;

Plaintiff also alleges that Defendant Sellers, the prison warden, knew of Defendant Ivey's allegedly unlawful actions but failed to correct his misconduct.   *Id.* at 5, 10. Additionally, Plaintiff argues that Defendants ordering him to offer his five daily prayers individually in his cell—rather than congregationally—violates his First Amendment rights and RLUIPA.   Am. Compl. 3, ECF No. 12.   Plaintiff asserts that, within the Muslim faith, congregational prayer is distinguished from individual prayer, and Plaintiff has an obligation to participate in congregational prayer (and its specific requirements) where three or more Muslims are present.   Am. Compl. 1.   Plaintiff states that he has been placed in Administrative Segregation on six occasions for engaging in congregational prayer.   Compl. 5.

Plaintiff also asserts that Defendants have prohibited him from participating in the Eid feast.   Am. Compl. 4.   Plaintiff explains that there are two Eid holidays celebrated with feasts, one on the first day of Shawwal and one on at the completion of Ramadan. *Id.*   Plaintiff states that, per GDOC policy, prison officials are to provide practicing Muslims with food from the prison Master Menu for the Eid feast.   *Id.*   According to Plaintiff, Defendants have prohibited Plaintiff from partaking in this religious exercise because other Muslims committed rule infractions in 2013 and 2015.   *Id.*

The incidents giving rise to this lawsuit began on January 4, 2012 and are "ongoing."  Compl. 5.  Plaintiff filed this action on January 11, 2016, seeking declaratory and injunctive relief as well as compensatory and punitive damages for these alleged violations.   Compl. 11-12.   He moved to amend his complaint on March 3, 2017 (submitting what this Court construes as his amended complaint) (ECF No. 12).

Plaintiff's motion was granted on April 5, 2016 (ECF No. 17).  Defendants filed their motion to dismiss on April 22, 2016 (ECF No. 22), arguing that Plaintiff's claims should be dismissed on the following grounds: (1) abuse of judicial process; (2) failure to exhaust administrative remedies; (3) failure to state a claim under section 1983; (4) failure to state a claim under RLUIPA; and (5) qualified immunity.  Defs.' Br. in Supp. 1, ECF No. 22-1.  This Court first considers Defendants' abuse of judicial process and failure to exhaust arguments.  The Court addresses Defendants' remaining arguments by considering first Plaintiff's individual capacity claims and then his official capacity claims.

## DISCUSSION

## I.      Defendants' Motion to Dismiss

### A.      Abuse of Judicial Process

Defendants aver that Plaintiff abused the judicial process by failing to disclose previous lawsuits.  Defs.' Br. in Supp. 4, ECF No. 22-1.  The Eleventh Circuit has upheld a district court's right to dismiss a complaint as a sanction for abuse of process when the plaintiff was dishonest regarding his litigation history.  *See Redmon v. Lake Cty. Sheriff's Office*, 414 F. App'x 221, 225-26 (11th Cir. 2011); *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006).  "A district court may impose sanctions if a party knowingly files a pleading that contains false contentions."  *Redmon*, 414 F. App'x at 225 (citing Fed. R. Civ. P. 11(c).)  However, "the court must make a finding of bad faith on the part of the litigant before imposing such sanctions."  *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).  A party engages in bad faith by "delaying or disrupting the

litigation or hampering enforcement of a court order." *Id.* (quotation and citation omitted).

Plaintiff filed his complaint using the Middle District's Questionnaire for the Prisoners Proceeding Pro Se under 42 U.S.C. § 1983 (the Standard Form). Compl. 1. Question 6 of the Standard Form asks:

> Other than an appeal of your conviction or sentence, and other than any habeas action, have you ever filed any lawsuit while incarcerated or detained?

Plaintiff responded "no." *Id.* at 2. Defendants assert that Plaintiff has actually filed at least three federal lawsuits in addition to this case. Defs.' Br. in Supp. 6.

Plaintiff responds that two of the three lawsuits listed by Defendants "are in conjunction to a habeas entered in the court on 02/25/1999 and 06/01/2001 respectively, filed by Plaintiff challenging his conviction and sentence[.]" Pl.'s Br. in Supp. of Opp'n 4, ECF No. 28-1. Indeed, Plaintiff states that he felt to list those two legal actions related to would have "been untruthful." *Id.* at 3.

Plaintiff states that the third lawsuit listed by Defendants was a actually letter sent to the Southern District Clerk of Court and Plaintiff did not intend for it to be construed as a § 1983 suit. Pl.'s Br. in Supp. of Opp'n 4. Plaintiff did not consider it to be "logged as a lawsuit" and therefore felt it would be "untruthful" to report it as such on the Standard Form. *Id.*

Based upon Plaintiff's response to Defendants' motion to dismiss for abuse of judicial process, this Court cannot find that that Plaintiff engaged in bad faith in failing to

list these three lawsuits on the Standard Form.  Therefore, the Court recommends that Defendants' motion to dismiss be denied on the grounds of abuse of judicial process.

### B.     Failure to Exhaust

Defendants next assert that Plaintiff's Complaint should be dismissed for failure to exhaust his administrative remedies.  Defs.' Br. in Supp. 7.  Plaintiff contends that he did exhaust his administrative remedies, but was not given a receipt for four grievances due to an unofficial "verbal policy" at Hancock State Prison.  Pl.'s Br. in Supp. of Opp'n 5.

Title 42, United States Code section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (internal quotation marks and citation omitted).  The argument that a plaintiff has failed to satisfy section 1997e(a) is properly raised in a motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss[.]").  Furthermore, since dismissal for failure to exhaust is not an adjudication on the merits, the Court can resolve factual disputes using evidence from outside the pleadings.  *Id.* at 1376.

 "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  "First, the

court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true." *Id.*  If, taking plaintiff's facts as being true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed.  *Id.*  "If the complaint is not subject to dismissal at the first step . . . , the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*  The defendant bears the burden of proof during this second step.  *Id.*

Defendants move to dismiss for failure to exhaust, arguing that Plaintiff "filed this lawsuit before completing the grievance process as set forth in the Grievance Policy." Defs.' Br. in Supp. 9, ECF No. 22-1.   Because Plaintiff alleges that the incidents he is complaining about began on January 4, 2012 and have been "ongoing," the relevant time period is  January 4, 2012 to January 1, 2016—the date this lawsuit was filed.  Compl. 5. In that period, Plaintiff filed some twenty grievances, at least five of which were categorized by GDOC as "Religion." Mahoney Aff. Ex. 2, ECF No. 22-3.  Plaintiff avers that an unofficial, verbal policy at Hancock State Prison prohibits counselors from "giving the receipt of a grievance to the offender" and therefore four of his grievances have become "unknown of, unheard of, thusly, unfiled." Pl. Br. in Supp. of Opp'n 5. "Because of said verbal grievance policy, Plaintiff do[es] not and cannot know with certainty whether his grievances are processed . . . therefore, he could not apply the second step of the grievance procedure by filing a Central Office Appeal[.]"  *Id.* at 6.

Defendants provided the GDOC's Standard Operating Procedures regarding grievances.   Mahoney Aff. Ex. 1, ECF No. 22-3.   The GDOC grievance procedure

consists of two steps: (1) the Original Grievance, which the Warden must respond to within 50 days and (2) the Central Office Appeal to the Office of the Commissioner, which must be responded to within 100 days.  Mahoney Aff. ¶ 11.  An inmate must file an Original Grievance no later than 10 calendar days from the date the offender knew or should have known of the facts giving rise to the grievance.   An inmate has seven (7) calendar days from the date he receives the response to the Original Grievance to file a Central Office Appeal.  *Id.* at ¶ 18.

Defendants acknowledge that Plaintiff filed two grievances relating to the events alleged in the Complaint.  Defs.' Br. in Supp. 9.  However, Defendants argue that those grievances did not include the information necessary to exhaust Plaintiff's administrative remedies.  Plaintiff asserts that he filed four grievances not discussed by Defendants. Pl.'s Br. in Supp. of Opp'n 4.  He states that he filed a grievance against Defendant Ivey for retaliation based on Plaintiff's Muslim faith, a grievance against Defendant Ivey for "removing [Plaintiff] from his detail assignment as an Educational orderly," a grievance against Defendant Ivey and others for assigning Plaintiff to administrative segregation solely because he announced the Muslim call to prayer and other harassment and negligent supervision by Defendant Sellers, and a grievance against a "Mr. Kendrick."[1] *Id.*  Plaintiff further asserts that he was unable to pursue or appeal those grievances due to the "verbal policies" of HSP.  *Id.* at 5.  Plaintiff thus contends that he exhausted his administrative remedies.  Because at the first stage of the exhaustion analysis the Court

---

[1] Mr. Kendrick is not a party to this lawsuit and the Court therefore disregards this grievance as irrelevant to the issue of exhaustion.  Furthermore, the date of filing (April 4, 2016) is after the date this lawsuit was filed.

must take Plaintiff's version of the facts as being true, Plaintiff's Complaint cannot be dismissed for lack of exhaustion at this first step. *Turner*, 541 F.3d at 1082; *see also Dollar v. Coweta Cty. Sheriff Office*, 446 F. App'x 248, 251-52 (11th Cir. 2011).

Since the Complaint was not dismissed at the first step, the Court can make factual findings relating to exhaustion. A defendant bears the burden of establishing a lack of exhaustion at the second step of the inquiry. *Turner*, 541 F.3d at 1082-83. The Court makes the following factual findings and determines that Defendants have not met their burden regarding the Plaintiff's claims.

Defendants provided Plaintiff's Grievance History as an exhibit to their motion to dismiss. Mahoney Aff. Ex. 2, ECF 22-3. Defendants do not address Grievance Nos. 162798, 193025, or 194750 listed within that exhibit—all of which were filed within the relevant time period and all in the grievance category of "Religion." Grievance No. 193025 was denied on appeal and thus the claims contained within that grievance *were* fully exhausted. Because Plaintiff avers that he filed grievances relating to the specific allegations of his Complaint but Defendants did not provide the Court with information regarding these seemingly relevant grievances, the Court cannot find at this time that Plaintiff failed to exhaust his administrative remedies.[2] The Court thus recommends that Defendants' motion to dismiss be denied on the grounds of failure to exhaust.

---

[2] The Court notes that it does not find that Plaintiff actually exhausted. Rather, the Court recommends that the parties have an opportunity to more fully develop the record on the issue of exhaustion as to any claims remaining after a ruling on Defendants' motion to dismiss.

C.    Individual Capacity Claims

Plaintiff states that "[e]ach defendant is sue[d] in their individual and official capacity." Compl. 1.  The Court will first consider Plaintiff's claims against Defendants in their individual capacities, and Defendants' arguments for dismissal of those claims.

   *i.    First Amendment Retaliation – Failure to State a Claim*

Defendants argue that Plaintiff fails to state First Amendment retaliation claims against Defendants Ivey and Sellers, and that those claims should therefore be dismissed. Defs.' Br. in Supp. 10.  When considering a motion to dismiss for failure to state a claim, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do[.]"  *Id.*  Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

In order to state a retaliation claim, Plaintiff must show:  (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on the speech.  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted).

Under the objective test used in the Eleventh Circuit, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (quoting *Constantine* v. *Rectors and Visitors of George Mason Univ., 411* F.3d 474 (4th Cir. 2005)).  In the prison context, the test is whether the alleged retaliatory conduct "would likely deter a prisoner of ordinary firmness from complaining." *Smith* , 532 F.3d at 1277.  Defendants argue that Plaintiff failed to meet the second and third prongs as to Defendant Ivey and failed to allege a basis for supervisory liability as to Defendant Sellers.

Plaintiff does not squarely address Defendants' argument.   Nothing within Plaintiff's pleadings suggests that a prisoner of ordinary firmness would be deterred from complaining, nor does Plaintiff even assert that he specifically was deterred.  Rather, Plaintiff's pleadings demonstrate that Defendant Ivey's actions did *not* stop or deter him from filing grievances or lawsuits.  Plaintiff specifically acknowledges that "[t]he deterrant [sic] effect on plaintiff due to defendant Ivey's adverse conduct had nothing at all of preventing plaintiff from filing grievances and/or a lawsuit."  Pl. Br. in Supp. of

10

Opp'n 12.   Plaintiff states only in a conclusory fashion that he was "deterred from exercising his religious rights," and makes no allegation that he or a prisoner of ordinary firmness would be deterred from filing grievances or pursuing litigation or that there was an adverse effect on his protected speech—i.e., his ability to complain.   These are necessary elements of the retaliation claim.   Plaintiff cannot state a claim for retaliation against Defendant Ivey on the face of his Complaint and Amended Complaint.   The Court therefore recommends that Plaintiff's retaliation claim against Defendant Ivey be dismissed.

Defendants similarly argue that Plaintiff fails to state a claim for retaliation against Defendant Sellers.   Defs.' Br. in Supp. 18.   Supervisors "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."   *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted).   To hold a supervisor liable, the Plaintiff must allege that the supervisor was "personally involved in acts or omissions that resulted in the alleged constitutional deprivation," *Hale v. Tallapoosa Cty.,* 50 F.3d 1579, 1582 (11th Cir. 1995), or that there is "'a causal connection between [the supervisor's] actions . . . and the alleged constitutional deprivation,'" *West v. Tillman, 496* F.3d 1321, 1328 (11th Cir. 2007) (citation omitted).   "The causal connection may be established and supervisory liability imposed where the supervisor's improper "custom or policy . . . result[s] in deliberate indifference to constitutional rights." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

Plaintiff does not assert that Defendant Sellers was personally involved in any of the alleged acts or omissions.  While Plaintiff argues that Defendant Sellers "encouraged" and "took no action to prevent" retaliation by Defendant Ivey against Plaintiff, this Court found above that Plaintiff does not state a claim for retaliation as to Defendant Ivey.  Pl.'s Pl. Br. in Supp. of Opp'n 14-15.  Plaintiff has not alleged a constitutional deprivation of the right to complain.  This Court thus recommends granting Defendants' motion to dismiss as to the retaliation claim against Defendant Sellers.

ii.     *RLUIPA Claim – Statute*

Defendants move to dismiss Plaintiff's RLUIPA claims against Defendants in their individual capacity, arguing that individual capacity claims are barred by the terms of the RLUIPA statute.  Defs.' Br. in Supp. 20.  Plaintiff responds only by asserting that he (Plaintiff) meets the definition of "a person" and thus the individual capacity claim should go forward. Pl. Br. in Supp. of Opp'n  15.  This appears to be a misunderstanding of individual capacity.  The Court must consider whether the statute authorizes a suit against defendants individually, not whether Plaintiff is a proper party to bring the suit.

A RLUIPA cause of action only lies "against a government."  42 U.S.C. § 2000cc-2(a); *see also Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (finding that RLUIPA does not allow individual capacity suits) *abrogated on other grounds by Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011).  Plaintiff's RLUIPA claims against Defendants in their individual capacities are thus barred by the statute, and this Court recommends Defendants' motion to dismiss be granted as to those claims.

### iii.    Free Exercise Claim – Qualified Immunity

Defendants Ivey and Sellers also contend that Plaintiff's free exercise claims against them in their individual capacities should be dismissed because they are entitled to qualified immunity.  "Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Anderson v. City of Naples*, 501 F. App'x 910, 915-16 (11th Cir. 2012) (internal quotation marks and citation omitted).  "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (internal quotation marks and citation omitted).

"In order to receive qualified immunity, an official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Id.*  Once the defendant shows that he or she was acting within her discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2004).  It is clear that Defendants Ivey and Sellers were acting under their discretionary authority when they engaged in the alleged actions described by Plaintiff—a fact Plaintiff seems to concede. *See* Pl.'s Resp. 18; see*, e.g., Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (explaining that "discretionary authority" includes "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were

13

within the scope of his authority") (internal quotation marks and citation omitted).

Because that determination is made, the burden then shifts to Plaintiff to show that the

Defendant is not entitled to qualified immunity. "To overcome an official's claim of

qualified immunity, the plaintiff must show that: (1) the official violated a constitutional

right; and (2) that right was clearly established at the time of the alleged violation."

*Anderson*, 501 F. App'x at 916 (citation omitted).[3]

The Court finds that Plaintiff has sufficiently alleged a free exercise claim.

*O'Lone*, 428 U.S. at 348-53. The Court must therefore determine whether that right was

clearly established. "To be clearly established, a right must be sufficiently clear that

every reasonable official would [have understood] that what he is doing violates that

right." *Reichle v. Howards*, 566 U.S. 658, 658 (2012) (internal quotation marks and

citation omitted) (alteration in original). "In other words, existing precedent must have

placed the statutory or constitutional question beyond debate." *Id.* (internal quotation

marks and citation omitted). The Eleventh Circuit has explained that:

> [a] right may be clearly established for qualified immunity purposes in one
> of three ways: (1) case law with indistinguishable facts clearly establishing
> the constitutional right; (2) a broad statement of principle within the
> Constitution, statute, or case law that clearly establishes a constitutional
> right; or (3) conduct so egregious that a constitutional right was clearly
> violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). Furthermore, "[t]he inquiry

whether a federal right is clearly established must be undertaken in light of the specific

context of the case, not as a broad general proposition." *Loftus v. Clark-Moore*, 690 F.3d

---

[3] Courts should use their discretion in determining which prong of the qualified immunity
inquiry to address first. *McCullough*, 559 F.3d at 1205.

1200, 1204 (11th Cir. 2012) (internal quotation marks and citation omitted). "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* (quotation marks and citation omitted) (emphasis and alteration in original). The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

Plaintiff has not identified, nor has the Court found, any decision of the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court to meet his burden of showing that entitlement to congregational prayer in the dayroom, while in an administrative segregation unit is a clearly established right. Defendants are thus entitled to qualified immunity for this free exercise claim. *See, e.g., Coley v. Smith*, 441 F. App'x 627, 629 (11th Cir. 2011). This Court therefore recommends that their motion be granted as to qualified immunity on Plaintiff's claims regarding congregational prayer.

There is, however, a clearly established right to observe Muslim holidays including Ramadan and the Eid. *See, e.g., Saleem v. Evans,* 866 F.2d 1313, 1314 (11th Cir. 1989) (discussing Eleventh Circuit precedent finding that plaintiff stated a claim for constitutional violation where plaintiff alleged prison officials prevented him from observing Ramadan in December, as mandated by his sect); *see also Smith v. Barrow*, CV-311-044, 2012 WL 4339563, at *6-7 (S.D. Ga. July 31, 2012) (denying defendant's

motion to dismiss on qualified immunity grounds, as plaintiff adequately pled a First Amendment claim by alleged defendant interfered with his right to practice his religion and would not provide meals consistent with plaintiff's religious beliefs). Here, Plaintiff alleges that he has been wholly prevented from celebrating the Muslim holiday of Eid. On those facts, this Court cannot currently find that Defendants are entitled to qualified immunity and recommends that Defendants' motion be denied as to qualified immunity on Plaintiff's claims that he has been prohibited from celebrating Eid.

D. Official Capacity Claims

The Court next considers Plaintiff's claims against Defendants in their official capacities. Claims against Defendants in their official capacities are against the same entity—the State of Georgia. *Ferguson v. Ga. Dep't of Corr.*, 428 F. Supp. 2d 1339, 1352 (M.D. Ga. 2006) ("Official capacity suits for damages against employees of a state agency are suits against the state agency.")

i. *Retaliation Claims – Eleventh Amendment Immunity*

Despite Plaintiff's Complaint caption stating that he is suing Defendants in both their official and individual capacities, it does not appear that Plaintiff asserts his retaliation claims against Defendants in their official capacities. Nonetheless, in an abundance of caution, the Court considers those claims in their official capacity. "[T]he Eleventh Amendment to the United States Constitution bars a § 1983 action against the State of Georgia and the GDOC unless the State either consents to suit or waives its sovereign immunity with regard to § 1983 claims—neither of which has happened here." *Ferguson*, 428 F. Supp. 2d at 1352. There has been no waiver of the State's sovereign

16

immunity as to Plaintiff's retaliation claims. It is therefore recommended that, to the extent that Plaintiff asserts First Amendment retaliation claims against Defendants in their official capacities, such claims be dismissed.

### ii. RLUIPA and Free Exercise Claims

Defendants move to dismiss Plaintiff's official capacity RLUIPA and free exercise claims, arguing Plaintiff does not satisfy the substantial burden element. Defs.' Br. in Supp. 20. Plaintiff responds that he met the substantial burden element in his amended complaint, filed on February 29, 2016. Pl.'s Resp. 16.

The First Amendment of the United States Constitution prohibits prison officials from imposing a substantial burden on the free exercise of an inmate's "sincerely held" religious belief, unless their actions or restrictions are "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 428 U.S. 342, 348-53 (1987). RLUIPA likewise "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see also Holt v. Hobbs*, 135 S. Ct. 853, 857 (2015) (finding the denial of a religious accommodation under the Arkansas DOC's grooming policy violates RULIPA where the policy to not allow half inch beards for religious purposes did not further a compelling interest and was not the least restrictive means to prevent specified concerns).

The First Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

Prison officials may limit a prisoner's free exercise of sincerely held religious beliefs if such "limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (per curiam) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). RLUIPA requires the government to justify any substantial burden on a prisoner's religious exercise by demonstrating a compelling governmental interest. *See Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277, 298 (2011). "To establish a *prima facie* case under RLUIPA, the plaintiff must demonstrate that his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." *Smith v. Owens*, --F.3d--, No. 14-10981, 2017 WL 655421, at *3 (11th Cir. Feb. 17, 2017).

Plaintiff describes how Defendants have allegedly prohibited him from engaging in congregational prayer necessary to the exercise of his Muslim faith. He avers that his Muslim faith requires him to participate in obligatory congregational prayer five times a day at prescribed times. Am. Compl. 1. Specifically, the prayer must be congregational when there are three or more male Muslims present. *Id.* Plaintiff cites to the Qur'an and Sunnah as evidence of this religious requirement. *Id.* at 1-2. Plaintiff also asserts that Defendant Sellers prohibited him from participating in the Eid holiday. *Id.* at 4. This Court thus cannot find at the motion to dismiss phase that Plaintiff's Complaint as to his official capacity free exercise and RLUIPA claims should be dismissed. This court recommends that Defendants' motion to dismiss should be denied with respect to Defendants' assertion that Plaintiff failed to state a claim.

The Court notes that Plaintiff cannot recover monetary damages on these claims. Title 42 of the United States Code, § 1997e(e) states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *See Williams v. Brown*, 347 F. App'x. 429, 436 (11th Cir. 2009); *Al-Amin v. Smith*, 637 F.3d 1992, 1999 (11th Cir. 2008). Because the Plaintiff has neither alleged nor offered any evidence to show the requisite physical injury from the alleged constitutional violation, he cannot recover on his claims for compensatory and punitive damages.

## II.     Plaintiff's Motion to Appoint Counsel

Plaintiff requests that legal counsel be appointed for him in this case (ECF No. 14).  Pursuant to 28 U.S.C. § 1915(e)(1), the district court "may request an attorney to represent any person unable to afford counsel."  There is, however, "no absolute constitutional right to the appointment of counsel" in a § 1983 lawsuit.  *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987).  Appointment of counsel is a privilege that is justified only by exceptional circumstances.  *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).

Here, Plaintiff filed a § 1983 *pro se* complaint on a standard form and attached supporting exhibits.  The facts stated in Plaintiff's Complaint are not complicated, and the law governing Plaintiff's claims is neither novel nor complex.  The Complaint and Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No 28) likewise

demonstrate that Plaintiff is able to articulate his claims and that he has a basic understanding of the law.

The undersigned thus finds that the essential facts and legal doctrines in this case are ascertainable by Plaintiff without the assistance of an attorney—despite his inability to afford counsel, limited access to the law library, and limited knowledge of the law. *See* Mot. for the Appointment of Counsel 1, ECF No. 14. Plaintiff's Motion for the Appointment of Counsel (ECF No. 14) is accordingly denied.

## CONCLUSION

For the reasons explained above, Plaintiff's motion to appoint counsel (ECF No. 14) is denied and it is recommended that Defendants' motion to dismiss (ECF No. 22) be granted in part and denied in part. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof. The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection,

however, the court may review on appeal for plain error if necessary in the interests of justice."

SO RECOMMENDED, this 28th day of February, 2017.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE