IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RICO STERLING, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 5:16-CV-13 (MTT) |
| | ) |
| ERIC SELLERS, Warden, *et al.*, | ) |
| | ) |
| | ) |
|     Defendants. | ) |
| | ) |

### ORDER

      Before the Court is the Recommendation (Doc. 30) of Magistrate Judge Stephen Hyles regarding Defendants Warden Eric Sellers and George Ivey's Motion to Dismiss (Doc. 22) Plaintiff Rico Sterling's First Amendment retaliation, Religious Land Use and Institutionalized Persons Act (RLUIPA), and free exercise of religion claims brought pursuant to 42 U.S.C. § 1983. The Magistrate Judge recommends dismissing Sterling's First Amendment retaliation and RLUIPA claims against the Defendants in their individual capacities. *Id.* at 11-12. The Magistrate Judge also recommends granting qualified immunity to the Defendants for Sterling's free exercise claim based on the denial of congregational prayer. *Id.* at 5. Finally, the Magistrate Judge recommends dismissing Sterling's First Amendment retaliation claims against the Defendants in their official capacities as barred by Eleventh Amendment immunity. Both parties have objected to the recommendation. Docs. 33; 34. In an abundance of caution, the Court has performed a de novo review as to the portions of the Recommendation to which the

parties object as well as those portions not subject to objection. The Recommendation is **ADOPTED in part** and **REJECTED in part**.

The Defendants object to the Magistrate Judge's consideration of allegations within Sterling's Motion to Amend (Doc. 12). Doc. 33 at 1-2. Additionally, the Defendants argue that if those allegations are considered then they should supplant the original complaint and the two pleadings should not be considered together. *Id.* But, as a pro se litigant, Sterling's pleadings are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citations omitted). Therefore, it was not improper for the Magistrate Judge to construe the Motion to Amend as an amended complaint. Additionally, the Court recognizes that an amended complaint generally supersedes the original complaint. *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982). However, under these circumstances, construing the original complaint and the allegations in the motion to amend together aids in the "orderly and expeditious disposition of" this case. *In re Novak*, 932 F.2d 1397, 1406 (11th Cir. 1991) (quotations and citations omitted). Thus, this Court agrees with the Magistrate Judge's decision to consider both the allegations in the original complaint and those stated in the motion to amend.

The Defendants also object to the Magistrate Judge's finding that Sterling has alleged a substantial burden on his religion as required for his official capacity RLUIPA and free exercise claims. Doc. 33 at 3-5. According to the Defendants, Sterling concedes that the multi-purpose room is available for prayer and thus he has not alleged a substantial burden based on the Defendants' purported denial of

congregational prayer. Doc. 33 at 4. However, Sterling does not concede this but merely quotes Defendant Sellers as saying, in response to one of Sterling's grievances, that the multi-purpose room is available for congregational prayer once a week. Doc. 1 at 8. Moreover, even if the multi-purpose room is available for this purpose once a week, Sterling still alleges a substantial burden because he claims his religion requires him to engage in congregational prayer every day. Doc. 12 at 1.

Next, the Defendants assert that Sterling has not alleged a substantial burden on the exercise of his religion based on the denial of the opportunity to take part in the Eid holiday because he has not alleged that the Eid is "religiously-mandated" or "obligatory." Doc. 33 at 4-5. "To establish a prima facie case under RLUIPA, the plaintiff must demonstrate that his engagement in religious exercise was substantially burdened by the law, regulation, or practice he challenges." *Smith v. Owens*, 848 F.3d 975, 979 (11th Cir. 2017). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *see also Smith*, 848 F.3d at 979. Therefore, Sterling is not required to allege that the Eid holiday is "religiously-mandated" for a denial of that activity to serve as a substantial burden for purposes of his RLUIPA and free exercise claims. Accordingly, the Magistrate Judge did not err in finding his compliant stated a substantial burden and the Court adopts that portion of the recommendation.

Sterling objects to the dismissal of his First Amendment retaliation claims against Sellers and Ivey in their individual capacities. Doc. 34 at 1-4. The Court sustains that objection. The Magistrate Judge found that Sterling failed to state a retaliation claim because he had not sufficiently alleged that a prisoner of ordinary firmness would be

deterred as a result of the adverse conduct. Doc. 30 at 10-11 (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)). The Magistrate Judge's recommendation appears to rely on the Defendants' argument that Sterling failed to allege that a reasonable person of ordinary firmness would be deterred from *filing grievances or lawsuits* due to the adverse conduct. Doc. 30 at 10. But Sterling alleges that he was retaliated against—by being placed in administrative segregation and "lock-down"—for exercising his First Amendment religious rights *and* for filing grievances. Docs. 1 at 5, 9-10; 28-1 at 7, 9-11. Indeed, the Defendants in their brief characterize Sterling's retaliation claim as one of being placed in "administrative segregation for engaging in Muslim prayer in the dayroom." Doc. 22-1 at 2. The Defendants simply overlook the issue they acknowledge Sterling has raised—whether an ordinary prisoner would be deterred from "engaging in Muslim prayer in the dayroom" in the face of these types of reprisals. *Id.* Given the Defendants failure to address the issue, and Sterling's allegations that he was deterred from practicing his religion, the Court cannot on its own say as a matter of law that Sterling has not sufficiently alleged deterrence.[1] Doc. 28-1 at 11 (citing Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (stating whether a plaintiff himself was deterred "might be evidence of what a reasonable person would have done"). And although Sterling apparently concedes that he was not deterred from filing grievances, that is not conclusive of whether a prisoner of ordinary firmness may

---

[1] Although the Defendants do not address the deterrent effect of administrative segregation on the exercise of Sterling's religion, they do argue generally that being placed in administrative segregation is not punitive and therefore is not adverse conduct. Doc. 22-1 at 13-14. The Recommendation does not address this argument and the cases the Defendants cite for this principle are factually inapposite. *See Mosley v. Medlin*, 2015 WL 106230 (S.D. Ga. 2015); *Bruce v. Gregory*, 2012 WL 5907058 (M.D. Fl.). Indeed, one reaches the opposite conclusion from what the Defendants contend. *Jinks v. Medlin*, 2014 WL 1224595 (allowing the plaintiff's retaliation claim to proceed). On this record, and under the circumstances, the Court cannot say as a matter of law that Sterling has not sufficiently alleged adverse conduct.

be deterred from doing so.[2]  *See, e.g.*, *Nelson v. McLaughlin*, 2014 WL 314478, at *3 (M.D. Ga.); *see also Bennett*, 423 F.3d at 1252 ("It would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persist[ed] in his protected activity.").  The Court therefore finds that Sterling has stated a First Amendment retaliation claim against Ivey in his individual capacity.[3]

The Magistrate Judge's recommendation concerning Sterling's retaliation claim against Sellers was dependent upon its finding that Sterling did not state a retaliation claim against Ivey.  Doc. 30 at 12.  Accordingly, the Court cannot adopt that recommendation.  A plaintiff may state a claim for supervisory liability by proving a causal connection between the supervisor and the constitutional violation.  *Cottone v. Jenne*, 326 F.3d 1352, 1361 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010).  "[A] causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.* (quotation marks and citations omitted).  Here, Sterling alleges that he informed Sellers of Ivey's retaliatory conduct.  Doc. 1 at 7.

---

[2] In his objection, Sterling appears to argue that, although he was not deterred from filing grievances, an ordinary prisoner may be deterred from doing so because of the adverse conduct.  Doc. 34 at 6.

[3] In their Brief, the Defendants also argue that Sterling's claim against Ivey should be dismissed because Sterling does not allege that Ivey was responsible for the adverse conduct and that he fails to state a causal relationship between the retaliatory conduct and the protected speech.  Doc. 22-1 at 13-21.  The Court rejects these arguments.  Sterling does allege Ivey was responsible for this adverse conduct, and he sufficiently states a causal relationship between that adverse conduct and the protected speech.  *See* Doc. 1 at 5.  Sterling's allegations show that Ivey was subjectively motivated by the protected speech.  *See* Docs 1 at 6; 28-1 at 11-12.  And, although his complaint lacks specific dates, accepting his allegations as true and construing his complaint liberally as required at the motion to dismiss stage with a pro se litigant, his allegations establish a sufficient temporal relationship between the protected speech and the adverse conduct.

Additionally, Sterling claims that Sellers not only knew Ivey was punishing prisoners for praying in the dayroom but that it was in fact Sellers's policy not to allow prayer in the dayroom. Docs. 1 at 7; 28-1 at 13-14. Sterling even attaches a memorandum to his complaint from Sellers that mandates "Religious services including prayer . . . are only to be conducted in your individual cells or during scheduled Religious Service." Doc. 1-8. These allegations, taken as true, state that Sellers put a "custom or policy" in place that "result[ed] in the deliberate indifference to constitutional rights"—namely the right to congregational prayer that Sterling asserts. *Cottene*, 326 F.3d at 1361. Moreover, Sterling's allegations allow for the inference that Sellers directed his employees to punish Sterling and other prisoners for exercising their First Amendment religious rights. *See Id*. The Court finds therefore that Sterling has alleged a First Amendment retaliation claim against Sellers. Accordingly, the Recommendation is **REJECTED** as to the First Amendment retaliation claim against the Defendants in their individual capacities. The Defendants' motion to dismiss is **DENIED** as to that claim.

Sterling also objects to the Magistrate Judge's recommendation to grant qualified immunity to the Defendants regarding Sterling's free exercise claim based on the denial of congregational prayer. Doc. 34 at 4. The Defendants' qualified immunity argument is based on their rejected assertion that Sterling has not stated a constitutional violation. *See* Doc. 22-1 at 26. The Defendants do not address whether, if Sterling alleges a constitutional violation, he has shown a clearly established right. *See id*. Accordingly, based on the arguments in the Defendants' motion, the Court cannot grant qualified immunity at this time. The Court notes that the Magistrate Judge did evaluate whether Sterling has shown a clearly established right. Doc. 30 at 15. However, the

Recommendation's characterization of the facts in this analysis is incorrect and therefore the Court **REJECTS** the portion of the Recommendation addressing qualified immunity and the denial of congregational prayer.[4]

The remaining portions of the Recommendation are **ADOPTED** and made the order of this Court.  Specifically, the Magistrate Judge's conclusions regarding the Defendant's abuse of judicial process and failure to exhaust arguments.

As discussed above, the Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**.  Sterling's individual capacity RLUIPA claims are **DISMISSED with prejudice**.[5]  Also, Sterling's official capacity retaliation claims are **DISMISSED** as barred by Eleventh Amendment immunity.  Meanwhile, Sterling's free exercise and retaliation claims against the Defendants in their individual capacities are allowed to proceed.  Sterling's official capacity RLUIPA and free exercise claims are also allowed to proceed.

**SO ORDERED**, this the 31st day of March, 2017.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[4] The Magistrate Judge recommends granting qualified immunity because Sterling has not met "his burden of showing that entitlement to congregational prayer in the dayroom, while in an administrative segregation unit is a clearly established right." Doc. 30 at 15.  Sterling does not claim that he is entitled to congregational prayer while he is in administrative segregation.  Rather, Sterling claims he is entitled to engage in congregational prayer while in the prison's general population and that, when he has exercised that right, he has been placed in administrative segregation.  Docs. 1 at 5-10; 12 at 3.

[5] Amendment to these claims would be futile because RLUIPA does not allow for claims against defendants in their individual capacity.  42 U.S.C. § 2000cc-2(a); *see also Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).