IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **RICO STERLING,** | : |
| **Plaintiff,** | : |
| v. | : CASE NO. 5:16-CV-00013-MTT-MSH |
| **WARDEN ERIC SELLERS,** *et al.*, | : |
| **Defendants.** | : |

## ORDER

Defendants Sellers and Ivey purport to move for summary judgment (Doc. 59) on all claims made against them in the above-captioned case. Defendants' motion and brief do not, however, discuss the Plaintiff's Eighth Amendment and Georgia constitutional claims. For the following reasons, their motion is **GRANTED** in part and **DENIED** in part.[1]

## BACKGROUND

The Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights under the First, Eighth, and Fourteenth Amendments; the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and the Georgia Constitution. Doc. 1 at 1, 5,

---

[1] Waseem Daker, who is not a party to this case, has appealed the Court's Order (Doc. 70) denying his motion to vacate (Doc. 67) the Court's prior Order (Doc. 61) that denied his motion to intervene (Doc. 40). Doc. 72. "[T]he filing of a notice of appeal divests the district court of jurisdiction *over the aspects of the case involved in the appeal.*" *United States v. Tovar-Rico*, 61 F.3d 1529, 1532 (11th Cir. 1995) (emphasis added). The only "aspects of the case involved in the appeal" are those in the Court's Order denying Waseem Daker's motion to intervene in this action, finding he could not intervene as a matter of right and that permissive intervention was inappropriate because Daker was attempting to circumvent the "three strikes" provision of the PLRA. Doc. 61. The issues raised in the Defendants' motion for summary judgment and addressed in this Order are not "involved in the appeal," and therefore the Court has jurisdiction to rule on the pending motion for summary judgment. *Tovar-Rico*, 61 F.3d at 1532.

10. The actions giving rise to this lawsuit allegedly began on January 4, 2012, and are "ongoing." *Id.* at 5. The Plaintiff contends that prison officials have a policy prohibiting religious services—including congregational prayer—in the prison's dayroom and that he has been repeatedly disciplined for violating that policy. *Id.* He claims that Defendant Ivey retaliated against him because of his attempts to engage in congregational prayer in the dayroom and that Defendant Sellers, the prison warden, knew of Defendant Ivey's allegedly unlawful actions but failed to correct them. *Id.* at 5, 10. The Plaintiff argues that the Defendants violated his First Amendment rights and the RLUIPA by ordering him to offer his five daily prayers individually in his cell rather than congregationally. Doc. 12 at 3. He asserts that Islamic doctrine distinguishes congregational prayer from individual prayer and obliges him to participate in congregational prayer (and its specific requirements) when three or more Muslims are present. *Id.* at 1. The Plaintiff claims he has been improperly punished and placed in Administrative Segregation for engaging in congregational prayer in the dayroom. Doc. 1 at 5.

The Plaintiff also asserts that the Defendants prohibited him from participating in the Eid feast. Doc. 12 at 4. He notes there are two Eid holidays celebrated with feasts, one on the first day of Shawwal and another upon completion of Ramadan. *Id.* The Plaintiff claims that Georgia Department of Corrections ("GDOC") policy mandates that prison officials provide practicing Muslims with food from the prison "Master Menu" for Eid feasts. *Id.* According to the Plaintiff, the Defendants have prohibited him from partaking in this religious exercise since 2012. Doc. 59-2 at 2.

Finally, without further detail, the Plaintiff alleges the Defendants have retaliated against him for filing grievances, in violation of the First Amendment. Doc. 1 at 10.

The Plaintiff filed this action on December 26, 2015,[2] seeking declaratory and injunctive relief, as well as compensatory and punitive damages, for the alleged violations. Doc. 1 at 11-12. He moved to amend his complaint on March 3, 2017. Doc. 12. That motion was granted on April 5, 2016. Doc. 17. The Defendants moved to dismiss on April 22, 2016. Doc. 22. On March 31, 2017, the Court entered an Order adopting in part and denying in part the Recommendation of the United States Magistrate Judge. Doc. 35. Pursuant to that Order, the following claims[3] were allowed to proceed: (1) the Plaintiff's First Amendment free exercise claim against the Defendants in their individual and official capacities[4] based on the alleged restrictions on congregational prayer in the dayroom and participation in the Eid feast; (2) the Plaintiff's RLUIPA claim against the Defendants in their official capacities based on the alleged restrictions on congregational prayer in the dayroom and participation in the Eid feast; and (3) the Plaintiff's First Amendment retaliation claims against the Defendants

---

[2] The Plaintiff signed his complaint on December 26, 2015. Doc. 1 at 11. Under the "mailbox rule," filings made by *pro se* prisoner litigants are considered filed on the date they are delivered to prison authorities for mailing. *See Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

[3] The Defendants' motion to dismiss did not address the Plaintiff's Eighth Amendment and Georgia constitutional claims. Doc. 22. The Order, therefore, did not address these claims. Doc. 35.

[4] The Defendants incorrectly state that the March 21, 2017 Order allowed the Plaintiff's "First Amendment free-exercise claims against Defendants in their **individual capacities only**" to go forward. Doc. 59-1 at 3 (emphasis added). But, the Order states that the Plaintiff's "**official capacity** . . . free exercise claim[] [is] allowed to proceed." Doc. 35 at 3 (emphasis added). The Plaintiff was transferred from Hancock State Prison after that Order was entered. Doc. 56. As the Defendants point out, the Plaintiff cannot, therefore, get declaratory or injunctive relief in this action. Doc. 59-1 at 18; *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986). He also cannot get damages against the Defendants in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, at this time, to the extent that the Plaintiff seeks to raise a First Amendment free exercise claim against these Defendants in their official capacities, he would not be entitled to any relief.

in their individual capacities for alleged retaliation against the Plaintiff for practicing congregational prayer in the dayroom and for filing grievances.

The Defendants have now moved for summary judgment on these claims. The Plaintiff has not responded to the motion, despite being notified of the consequences for failing to respond. Doc. 60.

**DISCUSSION**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.*

(alterations in original) (quoting *Celotex*, 477 U.S. at 324).  Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial."  *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

Upon receipt of the Defendants' motion for summary judgment, the Court notified the Plaintiff that he could not rely on his pleadings to establish genuine disputes of material facts.  Doc. 60.  He was also informed that the Court "may accept the factual assertions in [the Defendants'] motion as true" if the Plaintiff failed to respond.  Doc. 60.  The Plaintiff failed to respond.  While the Court liberally construes the Plaintiff's complaint, it "may not 'serve as de facto counsel for a party.'"  *Muhammad v. Bethel*, 430 F. App'x 750, 752 (11th Cir. 2011) (citation omitted).  "Indeed, pro se litigants still must comply with procedural pleading requirements."  *Mendenhall v. Blackmun*, 456 F. App'x 849, 851

(11th Cir. 2012) (explaining that pro se parties must comply with Fed. R. Civ. P. 56(c)). "A party asserting that a fact is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). "There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (§ 2254 proceedings stating that district courts should not have to "dig through volumes of documents and transcripts" to distill the petitioner's arguments).

## I. Congregational Prayer in the Dayroom

The Plaintiff alleges that the Defendants have violated the RLUIPA by prohibiting congregational prayer in the dayroom. Doc. 1 at 5, 9-10. Injunctive and declaratory relief are the only remedies available against prison officers in their official capacities under the RLUIPA. *Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011). In the Eleventh Circuit, a prisoner's claims for injunctive and declaratory relief are mooted by his transfer to another prison. *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985); *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir. 1984). The Plaintiff has been transferred from Hancock State Prison, the prison about which he complained in his original and amended complaints. Docs. 1; 12; 56. The Plaintiff's RLUIPA claim, for which only declaratory and injunctive relief are available, is therefore moot.

The Plaintiff also alleges that the Defendants' prohibition of congregational prayer in the dayroom violates his free exercise rights under the First Amendment, and that the Defendants have retaliated against him for practicing congregational prayer in

the dayroom. Doc. 1 at 9. For his retaliation claims, he alleges generally that he was placed in administrative segregation six times for practicing congregational prayer in the dayroom. However, he alleges specifically only two incidents of retaliation. He alleges that on March 5, 2014, Defendant Ivey had him placed in lockdown for engaging in congregational prayer in the dayroom, and on March 10, 2015, Defendant Ivey had him placed in lockdown because he announced a call to prayer in the dayroom. Docs. 1 at 5-6, 8; 59-2 at 3. In his deposition, the Plaintiff testified that he was assigned to lockdown on three occasions in 2013 and once during 2014 or 2015 for engaging in congregational prayer in the dayroom. Doc. 59-2 at 3.

The Defendants acknowledge that there are restrictions on congregational prayer in the dayroom. Doc. 59-1 at 2-3. In fact, on January 29, 2015, Warden Sellers issued a memorandum "prohibiting religious services, including prayer, in the dayrooms." Doc. 59-2 at 2. The Defendants argue that the Plaintiff's free exercise claim fails because he cannot show the restrictions satisfy the substantial-burden prong of this claim. Doc. 59-1 at 12-13. They argue that the Plaintiff's retaliation claim fails because the Plaintiff cannot show that praying in the dayroom is constitutionally protected. Doc. 59-1 at 15. Finally, the Defendants maintain that even if the Court should find prayer in the dayroom is constitutionally protected, qualified immunity entitles them to summary judgment on the Plaintiff's free exercise and retaliation claims. Doc. 59-1 at 15-17.

The Court agrees with the Defendants. The First Amendment prohibits prison officials from imposing a substantial burden on the free exercise of a prisoner's "sincerely held" religious beliefs, unless the restrictions are "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-53

(1987). The Defendants state that although inmates are not allowed to have congregational prayer in the dayroom, they are "permitted to congregate for prayer in" the multipurpose room. Doc. 59-2 at 2. Also, inmates may "continue conducting prayer, and other religious practices, in their cells and during scheduled religious services." Doc. 59-2 at 2.

The Defendants argue that any restrictions imposed on the Plaintiff's ability to participate in congregational prayer were imposed "for legitimate security interests." Doc. 59-1 at 11. They claim that a security threat emerged because "inmates wishing to use HSP's dayrooms [for congregational prayer] prevented non-Muslim inmates from using, or in some cases even entering, the dayrooms during congregational prayer." *Id.* at 12 (citing Doc. 59-4 at 4). Other inmates also "complained about congregational prayer in the HSP dayrooms because the chanting of the congregants prevented other inmates from hearing the dayroom television and from engaging in any other dayroom activities." *Id.* This apparently led to "altercations between Muslim and non-Muslim inmates over the use of the dayroom," which, in turn, caused "distraction to the correctional officers charged with monitoring the dayroom." *Id.*

The Plaintiff has not contested or otherwise rebutted the Defendants' claims regarding the alternative locations within the prison where congregational prayer and other religious services may take place. Given this, the Court finds that the Defendants have not placed a substantial burden on the Plaintiff's free exercise of his religion. Nor has the Plaintiff contested the Defendants' allegations regarding the need to mitigate security risks caused by congregational prayer in the dayroom. Additionally, even if the Defendants' policy against congregational prayer in the dayroom constitutes a

substantial burden on the Plaintiff's exercise of his religion, the policy is "reasonably related to legitimate penological interests" and thus does not violate the Plaintiff's First Amendment rights. *O'Lone*, 482 U.S. at 349 (1987).

Because the Plaintiff cannot establish that congregational prayer in the dayroom is constitutionally protected, he is also unable to establish a retaliation claim related to such religious practice. *See O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (stating that inmate must first establish that speech (or in this case religious practice) is "constitutionally protected" in order to successfully assert a retaliation claim).

Even if the Plaintiff could establish that the Defendants violated his constitutional rights when they prevented him from engaging in congregational prayer in the dayroom and punished him for violating the policy against congregational prayer in the dayroom, the Defendants would be entitled to qualified immunity. "[Q]ualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Once a defendant shows that he was acting within his discretionary authority, the burden then shifts to the plaintiff to establish that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In this case, it is clear that the Defendants were acting within their discretionary authority when they prohibited congregational prayer in the dayroom. *See, e.g., Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (explaining that "discretionary authority" includes "all actions of a government official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority") (quotation

marks and citation omitted). Accordingly, the Plaintiff must show that the Defendants are not entitled to qualified immunity. To meet this burden, the Plaintiff must "show[] (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quotation marks and citation omitted).

Even if the Plaintiff showed the Defendants violated a constitutional right, which he did not, he cannot show the right to congregational prayer in the dayroom was clearly established. "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration in original) (quotation marks and citation omitted). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and citation omitted). The Eleventh Circuit has explained that

> [a] right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013). Furthermore, "[t]he inquiry whether a federal right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quotation marks and citation omitted). "The relevant, dispositive inquiry in determining whether a right is *clearly* established is whether it would be *clear* to a reasonable [state official] that his conduct was unlawful in the situation he confronted." *Id.* (quotation marks and citation omitted) (emphasis and

alteration in original). The court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).

The Plaintiff has not identified, nor has the Court found, any decision of the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court clearly establishing a right to participate in congregational prayer in a prison's dayroom. Because there is no clearly established right to congregational prayer in the dayroom, the Defendants are entitled to qualified immunity on the Plaintiff's free exercise claim regarding prayer in the dayroom. *See, e.g., Coley v. Smith*, 441 F. App'x 627, 629 (11th Cir. 2011). Similarly, because there is no clearly established right to congregational prayer in the dayroom, the Defendants did not violate the Plaintiff's clearly established rights when they allegedly punished him for violating the policy against engaging in congregational prayer in the dayroom.

## II. The Eid Feast

The Plaintiff alleges that he is being denied participation in the Eid feast in violation of his First Amendment free exercise rights and the RLUIPA. Doc. 12 at 4. The Defendants argue that the Plaintiff's RLUIPA and free exercise claims are barred by the applicable statutes of limitations. Doc. 59-1 at 13-15. They also argue that they are entitled to qualified immunity on the Plaintiff's free exercise claims because the "Defendants could not have known that the . . . alleged prohibitions on .. . participation in the Eid feast . . . would violate [the Plaintiff's] constitutional rights." Doc. 59-1 at 17.

-11-

As explained above, the Plaintiff's RLUIPA claims are moot because the Plaintiff can no longer recover declaratory and injunctive relief—the only relief available against a state official under the RLUIPA. The issues are, therefore, whether the Plaintiff's First Amendment free exercise claim is barred by the statute of limitations and, if not, whether the Defendants are entitled to qualified immunity.

The forum state's limitation period applicable to personal injury actions is applied to actions brought under 42 U.S.C. § 1983. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The Georgia statute of limitations for personal injury is two years. O.C.G.A. § 9-3-33; *see also Bell v. Metro. Atlanta Rapid Transit Auth.*, 521 F. App'x 862, 864 (11th Cir. 2013) ("The forum state's statute of limitations for personal injury actions applies to § 1983 claims, which in Georgia is two years.").

According to the Plaintiff, he has been "forbidden" from partaking in the Eid feast every year since arriving at HSP in 2012. Doc. 59-2 at 2. This suit was filed on December 26, 2015. Doc. 1 at 11. The Plaintiff's claims for inability to participate in the Eid feast for 2012 and 2013 are therefore time-barred.[5] However, viewing the facts in the light most favorable to the Plaintiff, he was also prohibited from celebrating the Eid feast in 2014 and 2015, so his First Amendment claims for those years are not time-barred.

The Defendants argue that these claims "arise from facts that were or should have been apparent to him" after the first time the prison prevented him from participating in the feast. Doc. 59-1 at 14. But absent a policy prohibiting the feast—

---

[5] The specific Eid feast to which the Plaintiff appears to refer is the ʿĪd al-Fiṭr. Doc. 12 at 4; Doc. 59-3 at 70-71. In 2013, it took place in August. *See Eid Al-Fitr 2013: A Celebration at the End of Ramadan*, HUFFINGTON POST (Aug. 6, 2013, 9:02 AM) (updated Dec. 06, 2017), https://www.huffingtonpost.com/2013/08/06/eid-al-fitr-2013_n_3708856.html.

and the Defendants do not point to such a policy—there is no reason to think that the Defendants' prevention of the celebration of the Eid feast in 2012 should have put the Plaintiff on notice of future violations. The Defendants therefore have not made out a statute of limitations defense on the Plaintiff's claims that the prison forbade the Eid feast in 2014 and 2015.

The remaining issue is whether the Defendants are entitled to qualified immunity because, as they argue, they could not have known they were violating the Plaintiff's rights when they denied him the right to participate in the Eid feast. Doc. 59-1 at 17. As with the denial of congregational prayer in the dayroom, the Defendants are undoubtedly acting within the scope of their discretionary authority when they disallow participation in the Eid feast. But, unlike the situation with congregational prayer, the right of prisoners to observe Muslim holidays such as Ramadan and the Eid is clearly established. *See, e.g., Saleem v. Evans,* 866 F.2d 1313, 1314 (11th Cir. 1989) (discussing Eleventh Circuit precedent which found that a plaintiff stated a claim for a constitutional violation where he alleged prison officials prevented him from observing Ramadan in December, as mandated by his sect); *see also Smith v. Barrow,* 2012 WL 4339563, at *6-7 (S.D. Ga. 2012) (denying the defendant's motion to dismiss on qualified immunity grounds, as the plaintiff adequately pled a First Amendment claim by alleging the defendant interfered with his right to practice his religion and would not provide meals consistent with the plaintiff's religious beliefs). The Plaintiff alleges that he has been wholly prevented from celebrating Eid feasts despite a GDOC rule that prison officials must "provide the Muslim community with food from the prison master menu" in order to partake in the feast. Doc. 12 at 4. Given the clearly established

constitutional right to participate in this religious holiday and the alleged disallowance of such, the Court cannot find that the Defendants are entitled to qualified immunity on this claim. The Court, therefore, cannot grant summary judgment for the Defendants on the Plaintiff's 2014 and 2015 free exercise claims related to the Eid feast.

### III. Retaliation for Filing Grievances

In his original complaint, the Plaintiff alleged that Defendant Ivey was retaliating against him for "seek[ing] redress from the prison through use of the prison grievance system." Doc. 1 at 10. He faulted Defendant Sellers for failing to "correct" Ivey's conduct. *Id.* The Plaintiff provided no more details regarding this claim. The Defendants show that "Sterling has testified that the only retaliatory actions taken against him for filing grievances were (i) Ivey's February 16, 2015 removal of [the Plaintiff] from his position as an orderly in the educational area; and (ii) Ivey's confiscation of Sterling's personal CD player." Doc. 59-2 at 3 (citing Doc. 59-3 at 112:8-11, 114:2-15). The Plaintiff has no support for his assertion that Ivey's motive was retaliatory; he merely assumes this was Ivey's motivation. *Id.* at 4 (citing Doc. 59-3 at 114:16-115:23, 117:2-6). Furthermore, "Sellers had nothing to do with either of these alleged retaliatory actions." *Id.* at 4 (citing Doc. 59-3 at 115:24-116:2, 116:3-10).

To make out a claim for retaliation for filing grievances, a plaintiff must show that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (alterations in

original) (quotation marks and citation omitted). In this case, the first element is satisfied because the Plaintiff complains that he was filing grievances to complain about certain conditions of confinement; specifically, the Muslims' inability to engage in congregational prayer. Doc. 59-3 at 109:17-110:7. "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). For the second element, the plaintiff must show that the adverse action "would deter a person of ordinary firmness from exercising his or her First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005). For the third element, the Eleventh Circuit uses a burden-shifting framework: "[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm [i.e., disciplinary action], the burden of production shifts to the defendant." *O'Bryant*, 637 F.3d at 1217 (alterations in original) (quotation marks omitted). If the defendant can show he would have taken the same action in the absence of the plaintiff's protected activity, he is entitled to summary judgment. *Id.* at 1219.

Looking first at Defendant Sellers, it is clear that the Plaintiff faults him for failing to "correct" Ivey. Doc. 1 at 10. However, a supervisory official is not liable under § 1983 solely on the basis of respondeat superior or vicarious liability. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Instead, there must be an affirmative link between the defendant's action and the alleged constitutional deprivation. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1504 (11th Cir. 1985). The plaintiff must show one of the following: (1) personal participation; (2) "a history of widespread abuse [that] puts

the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; (3) "a supervisor's custom or policy [that] results in deliberate indifference to constitutional rights"; or (4) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quotation marks and citation omitted). The Plaintiff has shown none of these for Defendant Sellers. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone,* 326 F.3d at 1360*.* The Plaintiff has simply not shown a causal connection between Defendant Sellers's actions and the Plaintiff's alleged First Amendment violations. Therefore, Defendant Sellers is entitled to summary judgment on these First Amendment retaliation claims.

As for Defendant Ivey, the burden is on the Plaintiff to establish that the grievances were a motivating factor behind Ivey's termination of the Plaintiff's orderly position and Ivey's confiscation of the Plaintiff's CD player. *O'Bryant*, 637 F.3d at 1212. All the Plaintiff states is that he assumes Ivey's motive was retaliatory. Doc. 59-2 at 4 (citing Doc. 59-3 at 114:16-115:23, 117:2-6). To "survive . . . summary judgment," the Plaintiff must put forth "'specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury." *Craword-El v. Britton*, 523 U.S. 574, 598 (1998). The Plaintiff has failed to make even a prima facie showing that his constitutionally protected conduct, i.e., filing a grievance, motivated Ivey to take any adverse action against him. Thus, the inquiry could end here. But, Ivey has provided an affidavit in which he states that he did not confiscate the Plaintiff's CD player "for any

retaliatory motive," and he "did not remove, or play any role in the decision to remove, [the Plaintiff] from his role as orderly . . . either for retaliatory motive or for any other reason." Doc. 59-4 at 4. Again, the Plaintiff failed to respond to the Defendants' motion. The Court therefore considers the facts shown in Ivey's affidavit undisputed for the purposes of summary judgment. See Fed. R. Civ. P. 56(e)(2). Ivey is, therefore, entitled to summary judgment on the Plaintiff's claim for retaliation for filing grievances.

## IV. Compensatory and Punitive Damages

The Plaintiff seeks compensatory and punitive damages for his § 1983 claims. Doc. 1 at 11-12. The Prison Litigation Reform Act of 1995 bars prisoners from recovering either compensatory or punitive damages unless they have suffered more than a de minimis injury. 42 U.S.C. § 1997e(e). The Plaintiff has not alleged any physical injuries. He therefore cannot recover compensatory or punitive damages. *Id.*; *see also Carey v. Piphus*, 435 U.S. 247, 264 (1978); *Williams v. Brown*, 347 F. App'x 429, 436 (11th Cir. 2009). Nominal damages, however, may still be available. *Williams*, 347 F. App'x at 436.

## V. Other Claims

The Plaintiff makes additional claims against Defendant Sellers, specifically for violation of Georgia's constitutional guarantees of freedom of conscience, Ga. Const. art. I, § 1, ¶ III, and freedom of religion, Ga. Const. art. I, § 1, ¶ IV. Doc. 1 ¶¶ 29, 31. He also makes claims under the Eighth Amendment. *Id.* ¶¶ 30-31. It does not appear that these claims have been addressed, except in a general denial by the Defendants. Docs. 36 ¶¶ 29-31; 37 ¶¶ 29-31. Certainly, the Defendants have not moved for summary judgment on them.

However, the Court notes that the Eighth Amendment claim appears frivolous. The Plaintiff states that Defendant Ivey had him placed in administrative segregation on several occasions for "praying in the dayroom" or practicing his religious faith. Doc. 1 at 10. The Plaintiff alleges that this conduct "harassed" him and caused "suffering and emotional distress," in violation of the Eighth Amendment. *Id.* at 9-10. The Plaintiff alleges Defendant Sellers witnessed Ivey's conduct but failed to correct it, in violation of the Eighth Amendment. Doc. 1 at 10. These facts, however, do not raise a claim that the Plaintiff suffered cruel and unusual punishment. "The Eighth Amendment proscribes punishment that shocks the conscience, offends society's evolving notions of decency or is grossly disproportionate to the offense." *Sheley v. Dugger*, 833 F.2d 1420, 1428 (11th Cir. 1987) (quoting *Hutto v. Finney*, 437 U.S. 678, 686 (1978)). Placing a prisoner in administrative segregation alone does not amount to cruel and unusual punishment. *Id.* at 1428-29. Also, "'the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.'" *Id.* at 1429 (citing *Hutto*, 437 U.S. at 686). Here, it does not appear that the Plaintiff was deprived of adequate food, sanitation, clothing, or any other necessity during his confinement in administrative segregation. Also, it does not appear that he was ever in administrative segregation for more than thirty days at a time. Doc. 1 at 6. Such brief confinements do not violate the Eighth Amendment. Still, the Defendants have not moved for summary judgment on the Plaintiff's Eighth Amendment claim. Nevertheless, because the claim appears to be frivolous, the Court **ORDERS** the Plaintiff to **SHOW CAUSE** by October 31, 2018 why the Eighth Amendment claim should not be dismissed.

For the Plaintiff's claims under the Georgia Constitution, the Court **ORDERS** the parties to submit simultaneous briefs addressing those claims.

## CONCLUSION

For the reasons explained above, the Defendants' motion for summary judgment (Doc. 59) is **GRANTED** on the Plaintiff's official capacity claims under the First Amendment and the RLUIPA, on the individual capacity free exercise claims for the denial of the use of the dayroom for congregational prayer, and on the individual capacity free exercise claims for the Eid feast that accrued in 2012 and 2013. The Defendants' motion (Doc. 59) is **GRANTED** on all retaliation claims against Sellers and on all retaliation claims against Ivey. The Defendants' motion for summary judgment is **DENIED** on the individual capacity claims under the First Amendment relating to the Defendants' prohibition of the Eid feast in 2014 and 2015. Accordingly, only the individual capacity claims under the First Amendment relating to the Defendants' prohibition of the Eid feast in 2014 and 2015 shall go forward.

The Court orders the Plaintiff to **SHOW CAUSE** by October 31, 2018 why his Eighth Amendment claim should not be dismissed. The Court also **ORDERS** simultaneous briefing from the parties addressing the Plaintiff's claims under the Georgia Constitution. Those briefs shall be filed no later than November 15, 2018.

**SO ORDERED**, this 29th day of September, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
